# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY MONROE HICKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV 11-102-RAW-SPS |
| ) | |
| LINDA LANTRIP, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This action is before the court on Defendant Linda Lantrip's motion for summary judgment. The court has before it for consideration plaintiff's second amended complaint [Docket No. 65] and the defendant's motion [Docket No. 75], as well as a number of miscellaneous motions filed by plaintiff.[1]

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections who is incarcerated at Davis Correctional Facility (DCF) in Holdenville, Oklahoma, alleges Defendant Linda Lantrip, a contract psychiatrist for DCF inmates, failed to protect him from his dangerous cellmate who attacked, raped, and threatened to kill him on October 8, 2010. Plaintiff further asserts that approximately six weeks prior to the attack, he told Dr. Lantrip that his cellmate was buying and taking large quantities of the prescription drug Wellbutrin and using it to get high. The cellmate also was physically and sexually aggressive and not sleeping. Plaintiff was afraid the cellmate would attack and rape him and expose him to Hepatitis C. Lantrip allegedly told plaintiff she was aware of problems with Wellbutrin at DCF, and the facility was considering whether to discontinue its use. Her advice to plaintiff was to look for another cellmate, but she also told him that "things take time." Plaintiff claims that after the rape, he tested positive for Hepatitis C and has been treated for anxiety, depression, and post-traumatic stress disorder.

---

[1] On May 23, 2011, the court granted plaintiff's motion to voluntarily dismiss Defendant Justin Jones.

Defendant Lantrip has moved the court for summary judgment, alleging among other things that plaintiff failed to exhaust his administrative remedies before filing his complaint, as required by 42 U.S.C. § 1997e(a). Having moved for summary judgment in her favor, Lantrip is required to show "there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. With these standards in mind, the court turns to the merits of the defendant's motion.

Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA) or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

If there is no response to an inmate's Request to Staff within 30 days of submission, he may file a grievance informing the facility head that his RTS has not been answered. If a grievance is not answered within 30 days of submission, the inmate may file a grievance with the ARA, advising that the grievance has not been answered. The grievance process is not exhausted until all of these steps have been taken.

The defendant alleges the contract between DOC and CCA/DCF further requires DCF to maintain a grievance policy through which the inmates can address issues pertaining to their confinement at DCF that are not necessarily applicable to the DOC. CCA/DCF Grievance Policy 14-5 also requires an inmate first to attempt resolution of an issue through informal procedures before filing a formal grievance. If the grievance fails to resolve the issue, the inmate should submit an appeal to the warden for final resolution.

If an inmate believes he is in danger of irreparable harm or personal injury, he may submit an emergency grievance that will be answered within 48 hours. Submission of a request for informal resolution or a RTS is not a prerequisite to an inmate's ability to file an emergency grievance.

3

Plaintiff alleges he verbally warned Dr. Lantrip about his cellmate's Wellbutrin abuse about six weeks before the cellmate attacked him on October 8, 2010. According to the affidavit by Rebecca Adams, DCF Grievance Coordinator, however, plaintiff did not attempt informal resolution or file a Request to Staff regarding the issue before the attack. [Docket No. 75-2 at 3].

On October 11, 2010, plaintiff submitted a RTS to Defendant Lantrip, asking whether (1) she recalled their conversation about Wellbutrin abuse, (2) that particular medication would be discontinued, and (3) his prescription would be changed. DCF mental health staff member Jamie Woods responded on November 2, 2010, advising that medication decisions are made by the medical staff, pursuant to policy. [Docket No. 75-3]

On November 8, 2010, plaintiff sent to letter to the private prison administrator Renee Watkins, requesting a copy of the investigation into the alleged assault and rape. He also asked to be placed in protective custody and that his cellmate be prosecuted. Ms. Watkins responded on November 15, 2010, advising that plaintiff's protective custody previously was addressed, the investigation had not been completed, and plaintiff could write to the district attorney about prosecution of the cellmate. [Docket No. 75-4].

On November 16, 2010, he submitted a grievance, asking that his unit manager respond to his pending request for informal resolution concerning protective custody. The grievance was returned, because it lacked a notarized affidavit, and there was no evidence that his attached request for informal resolution had been submitted, as required by policy. Plaintiff resubmitted the grievance with a notarized affidavit on November 29, 2010, but it was returned again, because he still had not submitted a request for informal resolution. On December 12, 2010, he submitted the request for informal resolution, and Case Manager Grizzle responded on December 16, 2010. Plaintiff was advised that he already was in a single cell, and he had received a separatee against the former cellmate. [Docket No. 75-5].

On December 21, 2010, plaintiff submitted a RTS to Health Services Administrator Kathy Miller, requesting a copy of the RTS he had submitted to Dr. Lantrip on October 11, 2010, that was answered by Jamie Woods. Both Miller and Woods responded to the RTS on

4

December 27, 2010, stating he already had been advised that medication decisions are made by medical staff. [Docket No. 75-6]. He submitted a request for informal resolution on that same date, again asking for the response to his October 11, 2010, RTS to Dr. Lantrip, so he could exhaust his remedies. [Docket No. 75-7]. The staff response on January 24, 2011, indicated the issue was not remedied, because the form was improper. *Id.*

On December 27, 2010, he also filed a grievance asking for protective custody. The response stated that the State of Oklahoma does not recognize protective custody for maximum security offenders, but a separatee against plaintiff's attacker would be entered. Also, the facility would be "very selective" about plaintiff's housing assignment in the future. [Docket No. 75-8].

On January 4, 2011, plaintiff sent a grievance to the Health Services Administrator, again requesting a copy of his October 11, 2010, RTS to Dr. Lantrip with Lantrip's response. [Docket No. 75-9]. The record does not indicate whether there was a response.

According to Ms. Adams' affidavit, an examination of the DCF grievance records for plaintiff indicates he never submitted a Request to Staff, grievance, or appeal under the DOC or DCF policies with respect to Wellbutrin abuse or his fear of his cellmate before the October 8, 2010 attack. [Docket No. 75-2 at 3]. Mike Murray, Nurse Manager in the DOC Medical Services office, states by affidavit that the medical appellate review authority has not received any grievance appeals or other correspondence from plaintiff since August 1, 2010. [Docket No. 75-10]. In addition, Debbie Morton, Manager of the DOC Administrative Review Unit, states by affidavit that the records indicate plaintiff has not filed a grievance to the ARA concerning medical treatment related to the October 8, 2010, incident. [Docket No. 75-11].

Plaintiff has not responded to Defendant Lantrip's motion for summary judgment, but on November 13, 2012, he filed a notice of matter under advisement. [Docket No. 78]. Attached to the notice is an original Request to Staff dated January 5, 2012. [Docket No. 78 at 3]. The RTS, addressed to Sgt. Jimmy Wilson, asked Wilson to verify that (1) Wilson had seen or heard of inmates' Requests to Staff and grievances being thrown away, (2) he had

heard from staff or inmates that plaintiff had been assaulted, raped, and infected with Hepatitis C, and (3) he had heard that plaintiff is a snitch. *Id.* Sgt. Wilson's response, dated February 6, 2012, confirmed all three. *Id.* The court notes, however, that there is no date stamp on the form that would indicate it was processed by DCF staff.

On November 19, 2012, plaintiff filed a motion to voluntarily dismiss this action, because he cannot provide proof of exhaustion or interference with his attempts at exhaustion. [Docket No. 79]. The defendant filed a response [Docket No. 80], and plaintiff then filed an objection [Docket No. 81] to the response, alleging his current cellmate had threatened him with physical bodily harm if he did not file the motion to dismiss. He also filed a motion to strike his motion to dismiss, again claiming the motion to dismiss had been filed under duress. [Docket No. 82].

After careful review of the record, the court finds plaintiff has failed to exhaust his administrative remedies for his claims, as required by 42 U.S.C. § 1997e(a). All of his attempts at exhaustion were commenced after the incident on October 8, 2010, and his alleged conversation with Defendant Lantrip prior to that date cannot be considered as a step in the exhaustion of his administrative remedies. The court further finds there is no genuine dispute as to any material fact, and Defendant Lantrip is entitled to summary judgment pursuant to Fed. R. Civ. P. 56(a).

**ACCORDINGLY,** Defendant Lantrip's motion for summary judgment [Docket No. 75] is GRANTED, all other pending motions are DENIED, and this action is, in all respects, DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

**IT IS SO ORDERED** this 26th day of March 2013.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE